IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PALERMO GELATO, LLC, | ) |
| Plaintiff, | ) Civil Action No. 2:12-cv-00931 |
| v. | ) Judge Mark R. Hornak |
| PINO GELATO, INC., | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court is Defendant Pino Gelato, LLC's ("Pino") Partial Motion to Dismiss, in which Pino requests that Count I of Plaintiff Palermo Gelato, LLC's ("Palermo") three-count Complaint be dismissed under Fed. R. Civ. P. 12(b)(6). Having carefully considered Plaintiff's Complaint, ECF No. 1; Defendant's Motion to Dismiss, ECF No. 7, and Reply Brief, ECF No. 11; and Plaintiff's Response, ECF No. 9, and Brief in Opposition, ECF No, 10, the Court concludes *sua sponte* that the case must be dismissed for lack of subject matter jurisdiction.

### I. BACKGROUND

Sometime in 2008, Palermo, a Pennsylvania corporation, was seeking to open gelato stores in the Pittsburgh area. In search of a gelato product to sell, Palermo contacted the representatives of Pino, a South Carolina corporation, who allegedly made various representations that suggested that Pino was the "exclusive" owner of a "unique recipe" of gelato developed in Sicily. Compl. at ¶¶ 7-13. On September 19, 2008, the parties entered into a Store

License Development and Supply Agreement ("Agreement") for the licensing and supply of Defendant's gelato product at Plaintiff's places of business located in Allegheny County, Pennsylvania and Butler County, Pennsylvania. Compl. Ex. D.

The Agreement gave Palermo the exclusive rights to sell Pino products as a Pino licensee in Allegheny and (a portion of) Butler Counties. *Id.* ¶¶ 1(a), 13(a). Palermo agreed to supply an "Area Development Fee" of $25,000 and to purchase pans of Pino's gelato at $30.00 per pan. *Id.* ¶ 13(c), Schedule 2. Palermo also agreed to "operate each location exclusively under [Pino Gelato's] Mark . . . and such name shall be prominently displayed on the signage for each location." *Id.* ¶ 1(a).[1] Sometime after the Agreement was signed, Pino allegedly sent its gelato chef to Pittsburgh during the opening of Palermo's first store, where the chef informed Plaintiff that the gelato product came from Hilton Head, South Carolina. Compl. ¶ 21.

Around September 2011, Palermo allegedly discovered that the gelato it was purchasing from Pino was not small-batch crafted gelato, but in fact being manufactured in bulk by G.S. Gelato ("G.S."), a Florida company, and that G.S. also sold its gelato wholesale on its website. *Id.* ¶¶ 24-25. Palermo believed that its $30.00 per pan purchase price was approximately 30% higher than G.S.'s wholesale price for the identical product. *Id.* ¶ 32. In January 5, 2012, Palermo notified Pino of its beliefs about the provenance of the gelato and its intention "to rescind the Agreement and seek recovery of payments already made under the same." *Id.* ¶ 37. Plaintiff alleges that it was fraudulently led into the Agreement under the belief that it was purchasing high-end gelato from Pino's own exclusive recipe. It also alleges that the Agreement in fact

---

[1] In a "Limitation on Liability Clause," the parties also agreed that:
> Except for [breach of confidentiality and third party claims], in no event shall either party be liable to the other for lost profits or savings or for any indirect, incidental, consequential, special, punitive or exemplary damages in connection with this Agreement or the transactions contemplated by this Agreement, however caused, under any theory of liability.

*Id.* ¶ 12 (all capitalized in original).

2

established a franchise relationship with Pino, rather than a license relationship, and that the 30% "mark-up fees were essentially disguised royalties." *Id.* ¶¶ 35-36.

On July 6, 2012, Plaintiff filed suit in this Court (I) seeking a declaratory judgment that the Agreement is invalid and void because Pino and Palermo had entered into a franchise relationship, and Pino violated Federal Trade Commission (FTC)'s Franchise Rule, 16 C.F.R. § 436 ("Rule 436"), when it failed to provide to Palermo with a pre-sale disclosure document containing information about its franchise;[2] (II) asserting a claim of unjust enrichment; and (III) asserting in the alternative a claim of fraud in the inducement. Pino moves to dismiss only Count I of the Complaint under Fed. Civ. P. 12(b)(6), arguing that (1) the parties did not enter into a franchise relationship, and thus Rule 436 does not apply, and (2) even if the parties did enter into a franchise relationship, claimed violations of Rule 436 are only enforceable by the FTC, and does not provide any legal basis for the voiding of a contract between two private parties. Palermo asserts 28 U.S.C. § 1337 as the basis for federal jurisdiction as to Count I, and invokes supplemental jurisdiction under § 1367 as to Counts II and III. Compl. ¶ 3.

## II. DISCUSSION

Because the federal courts are of limited jurisdiction, even before turning to the merits of Pino's Motion to Dismiss, this Court is obligated to inquire as to whether it has subject matter jurisdiction over this case. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003).

---

[2] Under 16 C.F.R. § 436.1(h), a franchise is established when three criteria are met: (1) the franchisee has the right to use the franchisor's mark in selling its goods or services; (2) the franchisor "has the authority to exert a significant degree of control over the franchisee's method of operation," or provide significant assistance with the method of operation; and (3) the franchisee makes a required payment to the franchisor. The FTC has issued an advisory opinion which stated that a business relationship is deemed to be a franchise based not on what the parties call the relationship, but rather on if the three elements are met. FTC Informal Staff Advisory Op. 98-4 (1998); *see Englert, Inc. v. LeafGuard USA, Inc.*, CIV. A. No. 409-00253, 2009 WL 5031309, at *3 (D.S.C. Dec. 14, 2009). Under the Franchise Rule, a franchisor must provide to prospective franchisees a complete and accurate basic disclosure document containing information relating to the franchisor and its existing franchisees. 16 C.F.R §§ 436.2-436.5. A franchisor's failure to disclose that information is an unfair or deceptive trade practice that violates § 5 of the Federal Trade Commission Act (FTCA). 16 C.F.R § 436.2; 15 U.S.C. § 45.

Palermo's complaint asserts federal jurisdiction under 28 U.S.C. § 1337, which confers on the district courts original jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." One such Act of Congress is the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45. *See A.O. Smith Corp. v. FTC*, 530 F.2d 515, 519 (3d Cir. 1976). The scope of § 1337's "arising under" jurisdiction is the same as that of the more familiar § 1331. *MCI Telecomm'ns. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1094 n.4 (3d Cir. 1995). Section 1337 is the only basis for federal jurisdiction that Palermo asserts in its Complaint.

Whether there might also be diversity jurisdiction is unclear. 28 U.S.C. § 1332. Although it appears from the face of the Complaint that the only two parties to this case, Palermo and Pino, are citizens of different states, Compl. ¶¶ 1-2, Palermo has not asserted any specific amount in controversy, nor can it be adequately gleaned or inferred whether that number might be greater or less than $75,000 (exclusive of costs and interest) given the rather vague counts, claims, and assertions of damages in its Complaint.[3]

"A case 'arises under' federal law within the meaning of § 1331, [the Supreme] Court has said, if 'a well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90

---

[3] *See Onyiuke v. Cheap Tickets, Inc.*, 435 F. App'x 137, 139 (3d Cir. 2011):
> In determining whether the amount in controversy exceeds $75,000, the Court generally accepts the plaintiff's good faith allegations. *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir.1995). However, the case may be dismissed for failure to meet the amount in controversy requirement if it appears to a "legal certainty" that the claim is for less than the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, (1938); *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir.1999) . . . .

Given the vagueness of the Complaint, the Court can neither determine what the amount in controversy in this case might be based on Plaintiff's "good faith allegations," nor can it say "to a legal certainty" that Plaintiff's claims fall below the jurisdictional amount.

(2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 27–28 (1983). It is well settled that § 5 of the FTCA (and thus Rule 436) may only be enforced by the FTC, and does not create a private cause of action. *See, e.g., Sandoz Farm v. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 987, 1001 (D.C. Cir. 1973); *Freedman v. Meddy's, Inc.*, 587 F. Supp. 658, 659-62 (E.D. Pa. 1984). Therefore, the questions before this Court are whether Palermo's (a) well-pleaded Complaint establishes (b) that its right to relief necessarily depends on the resolution of a substantial question of federal law.

With regards to (a) the well-pleaded complaint rule, the Court has held that the application of federal law must arise in "the plaintiff's original cause of action," rather than by way of a defense to that cause of action. *Franchise Tax Board*, 463 U.S. at 12 (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908)). The Court has gone on to hold that the federal Declaratory Judgment Act (and it state law iterations) does not alter this rule to in any way expand the scope of federal jurisdiction. *Id.* at 16. Therefore, when the face of a plaintiff's complaint relies on federal law in seeking a declaratory judgment, "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Id.* at 16 (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)).

As to (b) when a plaintiff's state law claim for relief depends on the resolution of a substantial question of federal law, the Supreme Court has articulated the appropriate test as being whether "a state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc.*

5

*v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *see Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986) ("in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system").

These *Franchise Tax Board/Skelly Oil* and the *Grable/Merrell Dow* lines of cases are clearly interrelated, but involve quite different standards to be applied by the courts. The difficulty in determining which standard is more appropriate under the facts of a particular case likely arises from the fact that sometimes, the line between an affirmative state law cause of action for which federal law provides an element, and a declaration that federal law forms the basis of a state law right or liability, can be an extremely fine one. This tension is especially palpable in cases in which the validity of a contract is under attack by a plaintiff, where what is a "sword" and what is a "shield" is often murky. *Compare Koresko v. Murphy*, 464 F. Supp. 2d 463, 469 (E.D. Pa. 2006) (analyzing under *Grable* standard a claim where plaintiff asserted invalidity of contract for failure to comply with federal law) *with Dave v. Crowell & Moring LLP*, Civ. A. No. 10-0172, 2010 WL 1848147, at *9 (C.D. Cal. May 4, 2010) (distinguishing *Koresko*; holding that under mostly similar facts, *Skelly Oil* was the proper standard), *North Cent. F.S., Inc. v. Brown*, 951 F. Supp. 1383, 1397-98 (N.D. Iowa 1996) (same), *and Northwest Century Pipeline Corp. v. Mesa Petroleum Co.*, 576 F. Supp. 1495, 1500 (D. Del. 1983) (same); *see also Marel v. LKS Acquisitions, Inc.*, 585 F.3d 279 (6th Cir. 2009).[4]

Therefore, it is no wonder that at first blush it is difficult to determine which category Palermo's lawsuit more directly implicates: the *Franchise Tax Board/Skelly Oil* "well-pleaded complaint" line of cases addressing complaints that seek declaratory judgments, or the

---

[4] In *Skelly Oil*, on the other hand, the plaintiff sought a declaration of the *validity* of a contract given its conformity with federal law, and thus the 'shield' nature of the action was readily apparent. *See* 339 U.S. at 671.

*Grable/Merrell Dow* line addressing what federal ingredients embedded in state causes of action pass muster. To this end, it is necessary to drill down further on the precise nature of Palermo's claims.

The thrust of Palermo's Complaint is that Palermo was duped into entering an agreement based on Pino's misrepresentations that the Pino gelato product was a handcrafted Sicilian specialty developed by a noted gelato chef rather than being manufactured in bulk at a factory in Florida and sold on the internet. Palermo asserts in Count II a claim for unjust enrichment. ECF No. 1 ¶¶ 52-57. Under Pennsylvania law, "[t]he doctrine of unjust enrichment applies only to situations where there is no legal contract." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006). Therefore, assumedly as a predicate to this quasi-contractual claim, Count I seeks a "Declaratory Judgment" that the Agreement is "void for failure to comply with the requirements of the [federal] Franchise Rule." *Id.* ¶¶ 40, 52. Count III pleads, "in the alternative" to Counts I and II, a claim for fraud in the inducement. *Id.* ¶ 60.[5] The remedies Palermo seeks are a declaration that the Agreement is void, ¶ 52, and damages "including but not limited to" "licensing fees, lost profits due to product mark-up costs, attorney's fees and costs associated with this matter and other consequential damages." ¶¶ 57, 65.

Therefore, it seems that Palermo's Complaint can be interpreted in two ways. On the one hand, Count I read alone merely seeks a declaratory judgment that the Agreement is invalid due to its federal illegality. This would seem to merit the application of the *Skelly Oil/Franchise Tax Board* "well-pleaded complaint" standard, because it seeks a federal declaration that would only

---

[5] Unlike an unjust enrichment claim, a fraud in the inducement claim under Pennsylvania law is not extinguished by the presence of a written agreement. *See, e.g., Youndt v. First Nat. Bank of Port Allegany*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005). However, Pennsylvania's parole evidence rule bars extra-contractual representations "where the written agreement (1) contains terms which directly deal with the subject matter of the alleged oral representation; and (2) represents the entire contract between the parties." *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 489 (E.D. Pa. 2009) (citing *1726 Cherry St. P'ship v. Bell Atlantic Props.*, 653 A.2d 663, 666 (Pa. Super. Ct.1995)). Therefore it appears that while the validity of the Agreement is not a strict bar to Palermo's claim of fraud in the inducement, Palermo may have a well-founded belief that it is at least a hindrance.

otherwise arise as a defense to a state law contract action. On the other hand, Count I could be interpreted to plead what may be a necessary element of Palermo's claim in Count II for unjust enrichment, the absence of a valid written contract.[6] The federal element of an affirmative state law claim would place this case in the realm of *Grable* and *Merrell Dow*. Because these interpretations might be equally valid, *see supra* n.6, it is prudent to analyze Palermo's claims in each light. Still, by either road traveled, the end point is the same: Palermo's claims do not give rise to federal subject matter jurisdiction.

### A. Well-pleaded Complaint Rule/Declaratory Judgment

Palermo seeks a declaratory judgment that the Agreement is invalid because it violates the FTC's Franchise Rule. Under the "well-pleaded complaint rule . . . . a federal court does not

---

[6] From this Court's survey of Pennsylvania law, it remains unclear whether the absence of a valid written contract is a necessary *element* of a cause of action for unjust enrichment where such a contract is undisputedly in existence, or instead merely anticipates an *affirmative defense* to the unjust enrichment action. Pennsylvania courts do not list it as a formal element. *See, e.g., Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993) *aff'd*, 637 A.2d 276 (Pa. 1994) ("The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.") (internal quotation omitted). However, a contract's absence will certainly cause a Plaintiff to lose on summary judgment, *e.g. Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. Ct. 2006) ("By its nature, the doctrine of quasicontract, or unjust enrichment, is inapplicable where a written or express contract exists."), and at least one court has held that failure to adequately plead the absence of a valid written contract is fatal to a claim at the motion to dismiss stage, *Homziak v. Gen. Elec. Capital Warranty Corp.*, No. GD2000-1707, 2001 WL 35923945 (Pa. Ct. Com. Pl. May 21, 2001) (dismissing unjust enrichment claim where Plaintiff "[did] not plead facts on which this Court could conclude that the service contract is [unenforceable as] insurance"). Therefore, this Court cannot say with confidence whether in Pennsylvania the absence of a valid written contract is an "element" of, or rather an anticipation of an affirmative defense to, an unjust enrichment claim.

It is also conceivable that the complaint could also be read as an attempt to rescind the Agreement under Pennsylvania law, that is, to affirmatively unwind a *voidable* contract rather than seek a declaration that it was void *ab initio*. *Compare Am. Ass'n of Meat Processors v. Cas. Reciprocal Exch.*, 588 A.2d 491, 495 (Pa. 1991) ("the general rule [is] that an agreement which violates a provision of a statute, or which cannot be performed without violation of such a provision, is illegal and void.") *with Key Bank v. Crawford*, 600 F. Supp. 843, 846 (E.D. Pa. 1985) ("while Chalfont's failure to disclose may render the contract voidable, the contract does not require any wrongdoing and is therefore not void."). However, Pennsylvania courts have not viewed rescission as creating a cause of action in itself, but rather as an equitable remedy for causes of action such as fraud in the inducement. *See Clark v. Allstate Ins. Co.*, CIV.A.10-294, 2010 WL 1904013, at *2 (W.D. Pa. May 7, 2010) ("Under Pennsylvania law, there is no cause of action for rescission; rather, rescission is an equitable remedy that a court may grant when an insurer proves fraud by the insured in obtaining the policy.") (citing *Overmiller v. Town and Village Ins. Serv.*, 21 A.2d 411, 412–13 (Pa. Super. 1941). Therefore, because there is no affirmative state law cause of action of "rescission," an attempt to construe the Complaint as such to satisfy the well-pleaded complaint rule would be ineffective.

have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, or that a federal defense the defendant may raise is not sufficient to defeat the claim." *Franchise Tax Bd.*, 463 U.S. at 10 (internal citations omitted). If the plaintiff seeks a declaratory judgment of a federal issue (rather than asserting a state law cause of action), the well-pleaded complaint rule still applies in full force: "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Id.* at 16 (discussing *Skelly Oil*). In *Skelly Oil*, the Court found that there was no federal jurisdiction where a plaintiff sought a declaration that a contract was valid, on the grounds that a federal requirement contained in its terms was met. 339 U.S. at 670-71. It reasoned that because the federal issue arose solely as an anticipation of a federal law defense for breach of contract, the well-pleaded complaint rule was not satisfied. *Id.* at 672.

Another district court in our Circuit, confronted with facts similar to those here, found that a claim that sought a declaratory judgment that a certain contractual provision was unenforceable because its terms violated federal law was "purely anticipatory." *Nw. Cent. Pipeline Corp. v. Mesa Petroleum Co.*, 576 F. Supp. 1495, 1500 (D. Del. 1983). The court applied *Skelly Oil* to hold that because "[t]he claim, absent a declaratory judgment statute, would arise only as a defense to a breach of contract brought by [defendants] to collect payments for deficiencies," it did not satisfy the well-pleaded complaint rule. *Id.* at 1500-01. *Accord Dave v. Crowell & Moring LLP*, 2010 WL 1848147, at *9; *North Central F.S., Inc. v. Brown*, 951 F. Supp. at 1397-98.

Here, as in *Northwest Central*, *Dave*, and *North Central F.S.*, without the declaratory judgment, the claim that Pino could have brought against Palermo would have been a purely

9

state law claim for breach of contract, which Palermo would have defended based on the invalidity of the contract, citing federal law.[7] There would have been no federal claim that could have been asserted by Pino. Therefore, federal jurisdiction based on the declaratory judgment sought in Count I alone is lacking under *Franchise Tax Bd.* and *Skelly Oil*, because Palermo's claim does not satisfy the well-pleaded complaint rule.[8]

## B. Substantial Federal Issue

### 1. The *Grable* Standard

Assuming that Palermo could satisfy the well-pleaded complaint requirement by construing its sought-after declaration of invalidity of the contract as an element of its state law unjust enrichment claim (or some other cause of action recognized in Pennsylvania), it still would have to demonstrate that it alleged "a state law claim [that] necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

In *Merrell Dow*, the Supreme Court stressed the absence of a federal cause of action as strongly weighing against finding that a state law claim actually raised a substantial federal issue.

---

[7] While Palermo cites no federal or state statute as the basis for its "declaratory judgment" claim, it seems most plausibly to assert a claim under the federal Declaratory Judgment Act. If the claim sought a declaration under Pennsylvania's declaratory judgment statute, the basis for federal question jurisdiction in this case would arguably be even more questionable than it already is. *See Franchise Tax Board*, 463 U.S. at 17 (holding that *Skelly Oil* rule applies with equal force whether plaintiff cites federal Declaratory Judgment Act and files in federal court, or plaintiff cites state declaratory judgment statute and defendant removes, but not addressing any situation where plaintiff files in federal court citing state declaratory judgment statute).

[8] Additionally, to the extent that under Pennsylvania law the invalidity of a written contract is not properly considered an element of a cause of action for unjust enrichment, but rather is also an anticipatory reply to a defense of the presence of a contract, *see supra* n.6, it would also not satisfy the well-pleaded complaint rule. *See Mottley*, 211 U.S. 149.

10

478 U.S. at 810.[9] In *Grable*, the Court left the door open, if only a little, for state law causes of action predicated on federal laws that do no themselves create private rights of action. It noted that the absence of a federal cause of action is "relevant to, but not dispositive, of" whether a substantial federal interest is asserted, and held that under the facts in that case, such a federal interest was present as to confer jurisdiction. 545 U.S. at 314, 318. One year later, the Court emphasized the narrowness of its holding in *Grable*, and described *Grable* as delineating a "special and small category" of cases that qualify for federal question jurisdiction. *Empire Healthcare Assur., Inc. v. McVeigh*, 547 U.S. 677, 669 (2006).[10]

The Sixth Circuit has summarized the relevant facts in *Grable*:

> In *Grable & Sons*, the Court found that the interpretation of a provision of the Internal Revenue Code governing notice to land owners whose property is to be sold to satisfy delinquent taxes presented a substantial federal question in a title dispute action removed from state court. The meaning of that statute was genuinely in dispute, and the Court found that the government's interest in fixing the means of collecting delinquent taxes justified "the experience, solicitude, and hope of uniformity that [resort to] a federal forum offers on federal issues."

*Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 552 (6th Cir. 2006) (quoting 545 U.S. at 312). The Court itself in *Empire* noted that the dispute in *Grable* "centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *Empire*, 547 U.S. at 700. Finally, *Grable* discussed that in considering whether a federal

---

[9] In that case, the plaintiff brought a state negligence *per se* claim against a drug company, alleging as an element of the tort cause of action that the drug was misbranded under the Food, Drug, and Cosmetics Act. *Merrell Dow*, 478 U.S. at 810. The Court held that this claim did not confer federal jurisdiction, noting that Congress did not create a federal private cause of action for violations of the FDCA, and that the federal-state balance of litigation would be upset if every negligence *per se* claim that relied on the violation of a federal statute or regulation would confer federal jurisdiction.

[10] To date, the Third Circuit has engaged in a discussion of *Grable* in two written opinions, only one of which was precedential. In *Treasurer of N.J. v. U.S. Department of Treasury*, 684 F.3d 382, 402 (3d Cir. 2012), the court reaffirmed the "limitations" of *Grable* as elucidated by *Empire*. *See also Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010).

issue is substantial, federal courts must consider the proper balance of state and federal litigation: "A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts." 545 U.S. at 319 (discussing *Merrell Dow*, 478 U.S. at 811-12). Therefore, the lower courts are called upon to employ "sensitive judgments about congressional intent, judicial power, and the federal system" in conducting this inquiry. *Grable*, 545 U.S. at 318 (quotation omitted).

### 2. Application to Palermo's Alleged Facts

Upon review of Plaintiff's Complaint and the underlying facts of this case, the Court is confident that this case is not one that fits in the narrow category contemplated by *Grable*.

First, as noted above, it is well settled that § 5 of the FTCA (and Rule 436) may only be enforced by the FTC, and does not create a private cause of action. *See, e.g., Sandoz*, 902 F.2d at 231. Therefore, this is one of the cases in which there is a "missing welcome mat" from Congress to permit federal adjudication of private claims regarding alleged violations of the Franchise Rule, weighing against jurisdiction. *Grable*, 545 U.S. at 318; *see also Merrell Dow*, 478 U.S. at 810-11.

Second, in distinguishing *Grable*, the Court in *Empire* noted that *Grable* involved the action of a federal agency, while its own case "was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court." *Empire*, 547 U.S. at 700. As in *Empire* and in *Merrell Dow*, there are no federal or governmental actors in the fray here, but only two private business entities, also highlighting the lack of an important federal interest in this case.

Third, an examination of the nature of this action demonstrates that any federal claim Palermo has stands on exceedingly thin ice, and therefore that the federal question can hardly be considered "substantial." To be sure, based on the parties' briefing, it is clear that they actually and vigorously contest both the applicability of the Franchise Rule to their case based on their relationship and the terms of the Agreement, as well as its ability to serve as the basis for the unwinding of a contract, and recognize that issue as central to the lawsuit. *See* Def.'s Br. Supp. Mot. Dismiss, ECF No. 8, at 2 ("Count I is the lynchpin of Palermo's action. If Palermo cannot void the License Agreement, Palermo's claim of unjust enrichment fails . . .").

But even though the federal question may be "actually disputed," it is far from "substantial." *Grable*, 545 U.S. at 319. It appears that every court that has confronted the issue has determined, with persuasive reasoning, that a violation of the disclosure requirements of the Franchise Rule does not provide the basis to render a subsequent agreement void as illegal or contrary to public policy. *See Vino 100, LLC v. Smoke on the Water, LLC*, 864 F. Supp. 2d 269, 281 (E.D. Pa. 2012); *Holiday Hospitality Franchising, Inc. v. 174 West St. Corp.*, No. 05-149, 2006 WL 2466819, at *13 (N.D. Ga. July 19, 2006); *Crawford*, 600 F. Supp. at 846. Another district court confronted with this very same issue dismissed it for lack of "arising under" jurisdiction. *Mercy Health Sys. of Southeastern Pa. v. Metro. Partners Realty, LLC*, Civ. A. No. 02-1015, 2002 WL 1774060, at *2 (E.D. Pa. July 29, 2002).[11] Among the reasons enumerated in those opinions include the fact that the defendants' alleged failures to provide the Franchise Rule disclosures occurred outside of the formation of the contract and its terms, and thus any violation

---

[11] While the *Mercy Health System* court did not offer a detailed explanation of the reasons for its dismissal, 2002 WL 1774060, at *2, this Court notes that its holding is precisely the same as that of this Opinion. It is also worth noting that in each of the other three opinions that addressed contractual validity on the merits, there was a separate basis for federal jurisdiction other than the effect of the Franchise Rule on the contract, and therefore the "arising under" question was not before those Courts. *See Vino 100*, 864 F. Supp. 2d at 273 (Lanham Act); *Holiday Hospitality*, 2006 WL 2466819, at *1 n.1 (diversity); *Crawford*, 600 F. Supp. at 846 (interpleader, 28 U.S.C. § 1335).

would not go to the validity of the contract; that because the Franchise Rule is a regulation and not a Congressional statute, violations of it do not provide as potent a force to unwind a contract; that there were no indications that their respective states had incorporated the FTC's regulations as so central to their own public policy as to render them void, and that the plaintiffs were essentially seeking to circumvent the bar on private actions to enforce the FTCA. *See Vino 100*, 864 F. Supp. 2d at 280-281; *Holiday Hospitality*, 2006 WL 2466819, at *5-6; *Crawford*, 600 F. Supp. at 845-46. Therefore, this is not the case where "it is plain that a controversy respecting the construction and effect of the federal laws is involved and is sufficiently real and substantial." *Grable*, 545 U.S. at 316 (internal quotation omitted).[12]

In short, it is apparent on the face of the Complaint that Plaintiff is trying to seek a back door entrance into federal court, by citing a federal regulation with only a tenuous connection to the contract at issue, and then proffering that regulation as the source for the invalidity of the entire contract under Pennsylvania law. This case is really about whether Palermo got duped by Pino as to the source of the gelato product when it entered into the Agreement, and not whether Pino filled out its paperwork as FTC regulations allegedly required it to do. Whatever remedy Palermo has for its state law claims of unjust enrichment and fraud in the inducement, it is clear that the federal courts, when they rely on their "arising under" jurisdiction only, are not the proper place to adjudicate them. Federal law is among the last on the list of ingredients of this gelato mix.

Finally, *Grable* instructs this Court to ask whether allowing federal jurisdiction would disturb the "congressionally approved balance of federal and state judicial responsibilities." 545

---

[12] Although this Court is without subject matter jurisdiction to render a decision on the merits as to whether Count I should be dismissed for failure to state a claim, the Court notes that especially given the highly persuasive reasoning of the other three court opinions that have considered this precise issue, Palermo may well face an uphill battle on the merits of Count I were it to return to this Court sitting in diversity and press that claim's vitality.

U.S. at 314. Franchised businesses are nearly ubiquitous in this state and around the country. Many of the contractual disputes surrounding franchise agreements (or alleged franchise agreements, as in this case) are ordinarily plain vanilla state law contract claims. If in cases such as this, the mere presence of an FTC regulation that might apply to the parties' agreement could warrant the grant of federal jurisdiction, the risk of a marked shift in the currents of litigation would be real. As noted above, Congress's unwillingness to create a federal cause of action for a violation of § 5 of the FTCA is indicative of its view of the proper balance of state versus federal adjudication of franchise-related contract disputes. The potential for disrupting the state-federal balance of the adjudication of contract disputes, considered alongside the oblique relationship of FTC regulations to the contractual claims here, demonstrates that this case does not implicate a "substantial" federal law element of a state law claim, and thus does not fit within the narrow exception carved out by the Supreme Court in *Grable*. Therefore, the Court concludes that it lacks subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1337.

### C. DIVERSITY JURISDICTION

It appears that on the face of the Complaint there is complete diversity of citizenship of the parties, *see* Compl. ¶¶1-2, but the amount of controversy is at present unknown, leaving the possibility, though not certainty, of federal jurisdiction under 28 U.S.C. § 1332.[13] Because the Court has raised and disposed of the issue of subject matter jurisdiction under § 1337 *sua sponte*, Plaintiff has not yet been given the opportunity to assert whether there might also be jurisdiction under § 1332.

The Court believes that in this case, allowing leave to amend is the proper course of action. In *Scattergood v. Perelman*, 945 F.2d 618, 627 (3d Cir. 1991), the Third Circuit held that a district court abused its discretion when, after the court had dismissed the plaintiff's federal law

---

[13] *See Onyiuke v. Cheap Tickets, Inc.*, 435 F. App'x 137, 139 (3d Cir. 2011).

claims (eliminating the basis for federal question jurisdiction), the court denied a plaintiff's request for leave to amend to assert federal jurisdiction on the alternate basis of diversity. *See id.* (citing 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.")). Given the Third Circuit's holding and reasoning in *Scattergood*, the Court concludes that it is appropriate to give Plaintiff the opportunity to amend the Complaint before this case is dismissed from federal court.

Plaintiff shall have thirty (30) days to amend its Complaint if it seeks to allege federal jurisdiction under 28 U.S.C. § 1332. If, at the end of the thirty days, Plaintiff has not filed any such amended Complaint, this Court's order dismissing the case for lack of subject matter jurisdiction will take effect and the case will be dismissed forthwith. An appropriate order will issue.

*[signature]*

Mark R. Hornak
United States District Judge

Dated: January 24, 2013

cc:   All counsel of record