# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PALERMO GELATO, LLC, | ) |
| Plaintiff, | ) Civil Action No. 2:12-cv-00931 |
| v. | ) Judge Mark R. Hornak |
| PINO GELATO, INC., | ) |
| Defendant. | ) |

## MEMORANUDM OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court is Defendant Pino Gelato, LLC's ("Pino")'s Motion to Dismiss Plaintiff Palermo Gelato, LLC's ("Palermo")'s First (and Second) Amended Complaints[1] pursuant to Fed. R. Civ. P. 12(b)(6). Having carefully considered Plaintiff's First and Second Amended Complaints, ECF Nos. 14, 23; Defendant's Motion to Dismiss, ECF No. 16, Brief in Support, ECF No. 17, Reply Brief, ECF No. 20, and Supplemental Brief in Support, ECF No. 22; and Plaintiff's Response, ECF No. 18, and Brief in Opposition, ECF No. 19, the Court concludes that the case should be dismissed for failure to state a claim.

## I. BACKGROUND

The facts surrounding this case were explained by this Court in *Palermo Gelato, LLC v. Pino Gelato, Inc.*, 2:12-CV-00931, 2013 WL 285547 (W.D. Pa. Jan. 24, 2013) ("*Palermo I*"), and the Court need not reiterate them here. When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true the factual allegations in the Complaint and draw

---

[1] This procedural particularity is explained on page 4 below.

all reasonable inferences in the Plaintiff's favor. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Therefore, for the purposes of this decision, the essential facts are as follows.

Palermo, seeking to open gelato stores in the Pittsburgh area, agreed to purchase the product of Pino, who prior to entering into a license agreement wither Palermo allegedly made various representations that suggested that Pino was the "exclusive" owner of a "unique recipe" of gelato developed in Sicily. 2d Am. Compl. ¶¶ 11, 44, ECF No. 23. In 2008, the parties entered into a Store License Development and Supply Agreement ("Agreement") for the licensing and supply of Defendant's gelato product at Plaintiff's places of business located in Allegheny County and Butler County, Pennsylvania. Under the Agreement, Palermo agreed to purchase Pino's gelato product at a certain price and sell it with the Pino trademark, and Palermo became the exclusive Pino licensee in the area.

The Agreement contained an integration clause that provided,

> **(h) Entire Agreement.** This Agreement, together with the exhibits and schedules hereto, contains the entire understanding and agreement among the parties and their affiliates, or between or among any of them, and supersedes any prior understandings between or among any of them, with respect to the subject matter thereof.

2d Am. Compl. Ex. D, ECF No. 23-4 ¶ 14(h) ("Entire Agreement Clause"). The Agreement also contained a "No Franchise" clause that provided,

> **(b) No Franchise.** The parties agree that under no circumstances is it their intent to enter into a relationship that would be, or could be deemed to be, a "franchise" within the meaning of the applicable rules and regulations of Federal Trade Commission or under applicable state law . . . .

*Id.* ¶ 7(b).

Around September 2011, Palermo allegedly discovered that the gelato it was purchasing from Pino was not small-batch crafted gelato, but in fact being manufactured in bulk by G.S. Gelato ("G.S."), and that G.S. also sold its gelato wholesale on its website. Plaintiff alleges that

it was fraudulently led into the Agreement under the belief that it was purchasing high-end gelato from Pino's own exclusive recipe, and that as such, the price it was paying for Pino gelato was unfairly "marked up." It also alleges that the Agreement in fact established a franchise relationship with Pino, rather than a license relationship, and that the 30% "mark-up fees were essentially disguised royalties." 2d Am. Compl. ¶¶ 37-38. According to Palermo, if Pino would not have misrepresented that the parties were entering into a franchise relationship instead of a license relationship, Pino would have been forced to comply with franchise law by making certain disclosures that would have revealed the less-than-exclusive nature of the gelato recipe, and Palermo would not have entered into the contract. More specifically, according to Palermo, Pino's misrepresentations, made "prior to entering the Agreement," *id.* ¶ 20, were made through advertisements on its website, *id.* ¶ 10, promotional fliers, *id.* ¶ 11, and in person and telephone conversations with Defendant's Executive Vice President, John Jacobs, and Owner and President, Ramona Fantini, *id.* ¶¶ 12-17.

Plaintiff filed a Complaint in this Court against Pino, which the Court dismissed for lack of subject matter jurisdiction. ECF No. 1. Palermo had asserted as a basis for jurisdiction only federal question jurisdiction, 28 U.S.C. §§ 1331, 1337, which the Court found to be absent in this case. *Palermo I*, 2013 WL 285547, at *8. However, it appearing to the Court that on the face of the Complaint, federal diversity jurisdiction under 28 U.S.C. § 1332 might be proper, Plaintiff was given thirty (30) days to amend its Complaint and allege the propriety of diversity jurisdiction. *Id.*

Plaintiff, in turn, timely filed an Amended Complaint, asserting diversity jurisdiction, along with two counts against Pino under Pennsylvania law: Count I for Fraud in the Inducement, and Count II for Unjust Enrichment. Am. Compl ¶¶ 42-68. Pino moves to dismiss

Count I and II of the First Amended Complaint, on the grounds that the parol evidence rule bars any evidence of Palermo's fraud in the inducement claim, and that in the absence of any basis to invalidate the Agreement, Plaintiff's claim for unjust enrichment would be barred by the existence of that Agreement.

Upon review of Plaintiff's First Amended Complaint, it appeared to the Court that Palermo had not properly alleged facts supporting its citizenship as an LLC under the rule of *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) and 28 U.S.C. § 1332(a). The Court permitted Palermo to file a Second Amended Complaint sufficiently alleging jurisdiction, and gave Pino the option of renewing its prior 12(b)(6) motion in the event that the Second Amended Complaint would otherwise be substantively the same as the First. Text Order to Show Cause dated June 11, 2013. Plaintiff filed such a Second Amended Complaint, ECF No. 23, and Defendant filed a Notice electing to renew its prior 12(b)(6) motion, ECF No. 24. The Second Amended Complaint is identical to the First, except in that it contains two additional paragraphs in support of jurisdiction. Therefore, while Defendant's briefing refers to the First Amended Complaint, the Court regards its arguments as fully applicable to the Second, and Defendant has properly moved to dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(6) via its Motion and Notice, ECF Nos. 16 and 24.

## II. JURISDICTION AND STANDARD OF REVIEW

Plaintiffs' Second Amended Complaint properly sets out the foundation for this Court's subject matter jurisdiction under 28 U.S.C. § 1332, satisfying both the amount in controversy requirement of $75,000 exclusive of costs and interest, 2d Am. Compl. ¶ 4, and the diversity of citizenship requirement: Plaintiff is an LLC whose sole member is a citizen of Pennsylvania, while Defendant is a South Carolina corporation, *id.* ¶¶ 2-3.

4

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

## III. DISCUSSION

### A. Mediation Provision

Before examining the merits of the parties' arguments, the Court first observes that the Agreement contains a Dispute Resolution clause that states that as a "precondition to maintaining any legal action," "if any dispute arises between" the parties, they "will first attempt to mediate such a dispute within forty-five (45) days after either party requests in writing such mediation." ECF No. 23-4 ¶ 14(o)(i). The parties here have not raised the potential applicability of this clause on the instant action. As such, they have not informed the Court whether they have in fact, conducted such efforts at mediation, nor whether they believe that the clause does impose a "precondition" on litigation even if neither has requested it. However, Pennsylvania federal and state courts have held that "[a] party may waive its right to have its dispute settled by nonjudicial means by availing itself of the judicial process to resolve the dispute," and that "[a] party that engages in discovery and files pretrial motions waives a contract's alternative dispute resolution

5

provision." *LBL Skysystems (USA), Inc. v. APG-America, Inc.*, CIV.A. 02-5379, 2005 WL 2140240, at *30 (E.D. Pa. Aug. 31, 2005) (collecting cases) (internal quotations omitted).

Here, the Court observes that Plaintiff Palermo has "availed itself of the judicial process" by filing two complaints in this Court seeking significant amounts of money as damages from Pino for its allegedly fraudulent activities. Similarly, Defendant Pino has "availed itself of the judicial process" by filing two dispositive motions for failure to state a claim, ECF Nos. 7, 16, and not mentioning a desire to mediate in either of them. Moreover, Pino's first motion to dismiss (which this Court denied as moot upon the filing of Plaintiff's Amended Complaint) was a *partial* motion to dismiss, in which Pino suggested in its Proposed Order that after the Court dismiss the requested portion of the Complaint, the Court order that Pino file an Answer to the remaining counts, ECF No. 7-1, further demonstrating Pino's desire to avail itself of the full judicial process in lieu of taking a stab at mediation first. Although the *LBL Skysystems* court's discussion focused on defendants who had made it farther along the litigation pike than is the case here (all apparently had at least engaged in discovery), the Court concludes that on the facts here, Pino's acts have been sufficiently unambiguous and evince a sufficiently clear intent to seek judicial, rather than alternative, remedies that a finding of waiver is warranted.[2] Therefore, the Court concludes that both parties have waived their potential rights to seek mediation under the Dispute Resolution Clause as a precondition to commencing this action, and the Court may proceed to adjudicating their dispute on the merits.

---

[2] Defendant's counsel in a letter dated January 13, 2012 (six months prior to the initiation of this case), in response to a letter from Plaintiff's counsel regarding the present dispute, warned that "if Palermo persists in filing litigation without first engaging in mediation, Pino will file the appropriate motion to compel mediation . . . as per the Agreement." ECF No. 14-5. From this letter, it is reasonable to infer either that the requisite mediation in fact occurred between the date of that letter and the filing of this action six months later, or that the mediation never occurred, but Pino made the choice not to avail itself of that process. Either way, the statements of that letter are either belied or superseded by the fact that Defendant has chosen to invoke this Court's authority to dismiss this case with prejudice on its merits, and therefore the letter does not obstruct the Court's finding of a waiver here.

## B. Fraud in the Inducement

Defendant's argument is straightforward. According to Defendant, Pennsylvania's parol evidence rule bars the consideration of the alleged gelato-centric misrepresentations that fraudulently induced Palermo to enter into the Agreement; without those misrepresentations, Plaintiff cannot state a claim for fraud in the inducement in Count I; without a claim of fraud in the inducement, there is no basis for the claim of unjust enrichment in Count II, given the presence of a valid contract. The Court agrees.

Pennsylvania's parol evidence rule[3] as applied to claims of fraud in the inducement has been recently clarified in certain aspects. In *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 n.26 (Pa. 2004), the Pennsylvania Supreme Court surveyed the Commonwealth's parol evidence rule and held that "parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, i.e., that an opposing party made false representations that induced the complaining party to agree to the contract." The court reaffirmed that holding in *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 203-07 (Pa. 2007).

However, the exact scope of the parol evidence rule in Pennsylvania has not been as clearly delineated. The court in *Yocca* explained,

---

[3] Under choice of law analysis, Pennsylvania's parol evidence rule is the one that governs here. Generally, if parties have contractually agreed to the applicable law, that agreed upon law should be given effect. *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999). The Agreement states that it "will be governed by . . . the internal laws of the Commonwealth of Pennsylvania (without reference to principles of conflicts or choice of law)." ECF No. 23-4 ¶ 14(j). Nor do the parties dispute that Pennsylvania law applies here – while neither explicitly addressed choice of law in their briefing, both apply only Pennsylvania precedents in discussing the parol evidence rule. *See generally* ECF Nos. 17, 19, 20. Although some courts have refused to automatically apply a contractual choice of law provision to fraud in the inducement claim, *e.g. Atlantic Pier*, 647 F. Supp. 2d at 486 n.13, it appears that the Third Circuit has been willing to do so, *see In re Allegheny Int'l, Inc.*, 954 F.2d 167, 178 (3d Cir. 1992). Even so, taking together the choice of law provision in the contract, the apparent agreement of the parties on the issue, the fact that the alleged misrepresentations occurred in Pennsylvania and the allegedly injured party (Plaintiff) resides in and would have suffered any harm in Pennsylvania, and the fact that Pennsylvania is the forum of this Court, the Court has no difficulty in concluding that Pennsylvania law governs here. *See State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 n.2 (D.N.J. 2009) (applying New Jersey law where parties did not raise choice of law in suit involving fraud in the inducement claim).

7

for the parol evidence rule to apply, there must be a writing that represents the entire contract between the parties. To determine whether or not a writing is the parties' entire contract, the writing must be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement, it is conclusively presumed that the writing represents the whole engagement of the parties. An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution. Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements *involving the same subject matter* as the contract is almost always inadmissible to explain or vary the terms of the contract.

*Id.* at 497-98 (internal marks, citations, quotations omitted; emphasis added). Lower courts have diverged in interpreting this analysis. Some have held that for the parol evidence rule to apply, only a fully integrated contract is needed, without regard to whether the contract also speaks to the subject matter of the alleged misrepresentation. *See, e.g., Greylock Arms, Inc. v. Kroiz*, 879 A.2d 846, 848 (Pa. Commw. Ct. 2005); *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1252 (Pa. Super. Ct. 2002); *Vino 100, LLC v. Smoke on the Water, LLC*, CIV.A. 09-4983, 2011 WL 2604338, at *6 (E.D. Pa. July 1, 2011). Others have held that the parol evidence rule has two requirements: (1) that the written agreement "contains terms which directly deal with the subject matter of the alleged oral representation; and (2) represents the entire contract between the parties, particularly where the written agreement also contains an integration clause." *Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 486 (E.D. Pa. 2009) (citing *Bardwell v. The Willis Co.*, 100 A.2d 102 (1953); *accord Wall v. CSX Transp., Inc.*, 471 F.3d 410, 419 (2d Cir. 2006); *Cabot Oil & Gas Corp. v. Jordan*, 698 F. Supp. 2d 474 (M.D. Pa. 2010); *1726 Cherry St. P'ship v. Bell Atlantic Props.*, 653 A.2d 663, 666 (Pa. Super. Ct. 1995). A review of the above-cited cases reveals that the latter interpretation appears to be the interpretation that enjoys an increasing consensus of judicial opinions, is the

more thoroughly-reasoned of the two, and is more in line with Pennsylvania Supreme Court pronouncements, *see Yocca*, 854 A.2d at 436 (observing same subject matter); *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1279-80 (Pa. 1995) (same); *Bardwell v. Willis Co.*, 100 A.2d 102, 104 (Pa. 1953) (same).

Having determined that for the parol evidence rule to apply, the previous misrepresentations must "involve[e] the same subject matter as the contract," the question becomes, just how close does the relationship need to be in order to be the "same" for these purposes? There is language in a Pennsylvania Superior Court opinion that seems to suggest that the terms of the contract must *expressly* deny the particular misrepresentation: "when the contract contains no such term denying the existence of such representations, parol evidence is admissible to show fraud in the inducement." *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 546 (Pa. Super. Ct. 2005). The court in *Youndt* held that a real estate contract that stated "[b]uyer has inspected the property . . . and has agreed to purchase it as a result of such inspection and not because of or in reliance upon any representation made by the seller" precluded the buyer from introducing evidence that the seller fraudulently misrepresented that "there were no problems" with the property, when in fact there were. *Id.* at 544, 549.

Relying on that language, Plaintiffs here stake their claim on the fact that the Agreement "contains no terms denying the uniqueness of the gelato recipe, nor does it deny that Defendant produces and manufactures the product." Pl.'s Br. Opp. Def.'s Mot. Dismiss at 6, ECF No. 19. Plaintiff reads the language in *Youndt* too narrowly. First, the *Youndt* statement on which Plaintiff relies is dicta, because there the court *did* find terms that explicitly denied the existence of prior representations. *See Youndt*, 868 A.2d at 548-49.

Second, to the extent that the *Youndt* statement extends beyond its holding, it expresses an overly stringent view of the "same subject matter" requirement. *See Atlantic Pier*, 647 F. Supp. 2d at 490 n.19. The *Atlantic Pier* court carefully surveyed Pennsylvania law in determining the specificity required by the "same subject matter" requirement, and concluded that "[t]o fulfill the same subject matter requirement, the written contract need not directly contradict the prior representation, but rather need only 'relate to subjects that were specifically addressed in the written contract.'" 647 F. Supp. 2d at 490 (quoting *HCB Contractors*, 652 A.2d at 1279-90) (collecting cases).

The Court agrees with the thoughtful analysis in *Atlantic Pier*, and further observes that a rather relaxed view of the "same subject matter" requirement has been expressed in the more recent Pennsylvania Supreme Court cases. The court in *Yocca* did not explicitly outline the "same subject matter requirement" as such, and instead focused on the presence of an integration clause: "[a]n integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations and agreements made prior to its execution. . . ." It noted that the contract at issue directly referenced the subject matter of the alleged misrepresentation, but that "*[m]ost importantly*, the [contract] explicitly stated that it represented the parties' entire contract . . ." *Yocca*, 854 A.2d at 436 (emphasis added). In *Toy*, the court expounded further on why the parol evidence rule remains in full force for claims of fraud in the inducement, observing, "a party to a contract has the ability to protect himself from fraudulent inducements by insisting that those 'inducements' be made part of the written agreement, and refusing to contract if they are not." 928 A.2d at 206 n.24. Neither *Yocca* nor *Toy* ever stated that prior representations had to be explicitly denied. The Court concludes that in Pennsylvania, the better

10

view of the parol evidence rule in fraud in the inducement claims is that, at least in cases where a fully integrated contract is present, the "same subject matter" requirement is a more modest one.

Applying that standard to this case, there is no doubt that the "entire contract" prong is satisfied by the plain language of the "Entire Agreement Clause," which explicitly states that the Agreement embodies "the entire understanding and agreement among the parties . . . and supersedes any prior understandings between or among any of them." ECF No. 23-4 ¶ 14(h). It is also apparent from the face of the nineteen-page Agreement that it encompasses the entirety of matters regarding Palermo's license of Pino gelato.

The "same subject matter" prong is also satisfied here. Palermo's argument is that because Pino misrepresented to Palermo that it was the owner (and perhaps originator) of a top-shelf, special gelato recipe, rather than a private labeler of *somebody else's* gelato recipe, Palermo entered a contract it otherwise would not have, agreeing to buy Pino gelato at more-than-basement prices. First, the Agreement refers to Pino as "the *supplier* of products some of which bear [Pino] Marks . . ." *Id.* at 1. Section 2 of the Agreement then refers to the gelato recipe:

> In the event [Pino] is reasonably expected to go out of business or should PG for any reason not be able to provide Product to Licensee, PG shall either train [Palermo] to manufacture the [gelato] Products or work with [Palermo] to identify a third party manufacturer to provide Products to [Palermo] directly. [Pino] shall have said recipe and equipment held on file at the firm of Baker & Daniels in Indianapolis, Indiana, for [Palermo's] benefit and use in the event such third party is not identified timely, thereby permitting Licensee to secure any alternate manufacturer or prepare the product itself.

Agreement ¶ 2. Section 5(d) does as well:

> In the event that [Pino] should go out of business . . . [Pino] shall provide [Palermo] with the recipe, equipment specifications and the 3rd-party manufacturing specifications to enable Palermo to continue to operate its store(s). . . . [Pino]'s obligations hereunder shall be met by providing [Palermo] with names, addresses, and other contact information of all vendors who supply

> any of the product provided to [Palermo] under this Agreement, and if any of the vendors will no longer provide Product, shall provide [Palermo] with all recipes, formulas, mixing directions, sources for ingredients and any other information.

Agreement ¶ 5(d). Under the Agreement, Pino represented that it had a significant amount of dominion and control, if not outright ownership (under copyright or trade secret law, e.g.) of the gelato recipe. Therefore, a review of the Agreement demonstrates that it plainly "relates to" the subject matter of the alleged misrepresentation, namely, the ownership and source of the gelato and the gelato recipe.[4]

While this case is slightly unusual in that the terms of the contract seem to *confirm*, rather than *deny*, the content of the alleged misrepresentation, *cf. Atlantic Pier*, 647 F. Supp. 2d at 490-91, the "relates to the same subject matter" requirement of the parol evidence rule, as it has been articulated above, does not appear to carry either a positive or negative valence. In other words, it is enough that the contract relates to the subject matter of the gelato recipe in order for the parol evidence rule to operate and bar other representations on that topic – it need not carry terms that run *contrary to* those other representations, even implicitly. Here, Palermo has not asserted a claim that Defendant breached any terms of the contract, nor that those terms were fraudulent in themselves. Rather, it has brought a classic fraud in the inducement claim, asserting that it was induced to contract "[b]ased on the representations and information provided by Defendant prior to entering the Agreement", 2d Am. Compl. ¶ 20, and that "but for this misrepresentation, Plaintiff would not have [entered into the Agreement]" ¶ 47; *see also id.* ¶ 50. While the result here might be tough medicine for someone in Palermo's spot, it is in line with the Pennsylvania Supreme Court's recently amplified pronouncements refusing to allow parol evidence as to fraud

---

[4] Additionally, Plaintiff's claim that it was fraudulently induced to entering an agreement that "amounts to" a "franchise agreement," 2d Am. Compl. ¶ 50, is also vitiated by the terms of the Agreement's "No Franchise" Clause, ¶ 7(b), which specifically states that it is the parties' intent *not* to enter into a franchise relationship, easily satisfying the same subject matter requirement with regard to that claim.

in the inducement claims, especially in the presence of an integration clause. *See, e.g., Toy*, 928 A.2d at 206 n.24. The Entire Agreement clause plainly states that "any prior understandings" are superseded by the Agreement, and discusses topics that relate to the gelato recipe. If Palermo in fact relied on certain beliefs about the origins of the gelato it was purchasing, it could and should have ensured that those beliefs were embodied in the written Agreement between the parties.

Without the evidence of the prior misrepresentations that induced it to contract, Palermo cannot state a viable claim for Fraud in the Inducement at Count I of the Second Amended Complaint.[56] *See, e.g., Bardwell*, 100 A.2d 102. Because, absent Plaintiff's claim of fraud in the inducement, Plaintiff has not made any demonstration that the Agreement is invalid, and because a claim for unjust enrichment cannot stand where a valid contract exists, *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. Ct. 2006), Plaintiff's claim for Unjust Enrichment at Count II must also be dismissed. Therefore, Defendant's Motion to Dismiss is granted, and the case shall be dismissed.

An appropriate order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: June 19, 2013

cc: All counsel of record

---

[5] The elements for fraud in the inducement in Pennsylvania are "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 257 (3d Cir. 2013) (quoting *Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa. Super. Ct. 2002)).

[6] Given the Court's conclusion that Plaintiff fails to state a claim because of the operation of the parol evidence rule, it need not consider Defendant's alternative argument that the "gist of the action" doctrine also bars Plaintiff's claim. *See generally* Def.'s Supplement Reply Br., ECF No. 22.